IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MICHAEL S. IRVING,

      Plaintiff,

vs.                                                                 No. 13-cv-00984 RB/SCY

LOS ALAMOS NATIONAL SECURITY, LLC,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Michael S. Irving sued his current employer, Defendant Los Alamos National Security, LLC ("LANS"), claiming that LANS unlawfully retaliated and discriminated against him. LANS moved for summary judgment. (Doc. 54.) Plaintiff opposed the motion. (Doc. 61.) LANS then moved to strike several of the exhibits attached to Plaintiff's Response Brief. (Doc. 72.) Having reviewed the parties' submissions and arguments, the Court GRANTS LANS's motion for summary judgment and DENIES LANS's motion to strike as moot.

**I. BACKGROUND**

Plaintiff began working for LANS in 1997. (Def. Ex. B, Irving Dep. 9:15-21, Doc. 55-2.) During his eighteen years with LANS, Plaintiff received regular promotions and pay raises. (Def. Ex. A, Sandoval Aff. ¶ 4(b), Doc. 55-1.) In 2012, the time period at issue in this litigation, Plaintiff was a Security Manager and was earning $124,928.56 per year. (*Id.* ¶ 4(e).) As part of his work, Plaintiff and his team provided security to various research and development and operational programs at the Los Alamos National Labs. (Def. Ex. C, Wismer Aff. ¶¶ 3-6, Doc. 55-4.) Plaintiff still works at LANS to this day. (Sandoval Aff. ¶ 4(a).)

In 2011, Plaintiff and others on the security team voiced concerns over the protocol for handling "distinguished visitors" to the Los Alamos National Labs. (*Id.* ¶¶ 8, 9.) These views created friction between the security team and the operational personnel at Los Alamos National Labs. (*Id.* ¶ 8.) Ultimately, in May 2011, the associate director for security, Darryl Overbay, appointed a "point of contact" between Mr. Irving's security team and the Los Alamos National Labs operational team. (*Id.* ¶ 9.) After the incident over security breaches during distinguished visitor viewings, Plaintiff felt "isolated and marginalized" at work. (Irving Dep. 27:14-22.) Allegedly, Plaintiff's supervisor informed him in summer 2011 that as long as Mr. Overbay remained an operations director, Mr. Overbay would "veto" any of Plaintiff's attempts to seek a promotion. (Def. Ex. F.) Initially, Plaintiff attempted to challenge the retaliation he suffered based on vocalizing these security concerns. (Am. Compl. ¶¶ 18-22.) The Court dismissed this portion of Plaintiff's Amended Complaint in April 2014. (Doc. 20.)

In the late summer of 2012, LANS reorganized and consolidated its deployed security services programs. (Wismer Aff. ¶¶ 12, 16.) Plaintiff's immediate supervisor retired. (*Id.* ¶ 13.) Instead of replacing the supervisor, LANS consolidated Plaintiff's group into a group led by Michael Wismer. (*Id.* ¶¶ 12, 13.) As part of the consolidation, LANS reduced the number of security managers in Plaintiff's group from seven to three. (*Id.* ¶ 16.) Three security managers remained active, including Plaintiff, another male, and a female. (*Id.* ¶ 19.) Four other security managers were not as lucky. LANS removed management duties from three males and one female. (*Id.* ¶ 16.) Plaintiff thought that retaliation or discrimination motivated the demotion of the female, Michelle Baran. (Irving Dep. 144:1-145:21.)

Plaintiff claims that he complained about the perceived discrimination against Ms. Baran to LANS supervisors. (Doc. 61 at 5-6.) His former supervisor, Mr. Andrew Budka, recalls

Plaintiff complaining that LANS retaliated against Ms. Baran because of her complaints about security protocols, but not because of gender discrimination. (Def. Ex. D, Budka Dep. 58:12-59:9, 66:11-14, Doc. 55-5.) Similarly, Ms. Mary-Jane Weber from the LANS human resources department recalls that Plaintiff complained that Ms. Baran was being discriminated against because she raised security concerns. (Def. Ex. M, Weber Dep. 20:11-19, 37:2-14 39:1-40:5, Doc. 55-14.) While Ms. Weber theorized that the treatment could be discriminatory, Plaintiff did not state that he thought gender discrimination motivated the treatment. (*Id.* 20:6-10, 47:25-28:9.) Plaintiff's new supervisor, Mr. Wismer, denies that Plaintiff ever talked to him about gender discrimination against Ms. Baran. (Wismer Aff. ¶ 18.)

Separately, Plaintiff alleges that he faced age discrimination at work. On September 20, 2012, Mr. Wismer informed Plaintiff that, as part of the departmental reorganization, Mr. Wismer needed one of the security managers to take on additional operational and ministerial tasks. (Wismer Aff. ¶¶ 20, 25.) During this meeting, Mr. Wismer told Plaintiff that the operational responsibilities would be assigned to Plaintiff's fellow security manager, Darren Schnedler. (*Id.* ¶ 25.) Mr. Schnedler was younger and less experienced than Plaintiff. (Pl. Ex. D, Budka Dep. 19:17-20:14, Doc. 61-4.) After a month and a half, Mr. Wismer discontinued the position and removed Mr. Schnedler's additional duties. (Wismer Aff. ¶¶ 31-32.) Over the course of the past three years, Mr. Schnedler received a more significant pay raise than Plaintiff. (Sandoval Aff. ¶ 4.) At all relevant times, however, Plaintiff earned more than Mr. Schnedler. (*Id.*) Currently, Plaintiff earns over $14,000 a year more than Mr. Schnedler. (*Id.*)

Finally, Plaintiff claims he opposed age discrimination at work. (Doc. 61 at 18.) His former supervisor, Mr. Budka, says Plaintiff never complained to him about age discrimination.

(Budka Dep. 66:15-18.)  Ms. Weber also does not recall Plaintiff complaining about age discrimination.  (Def. Ex. M, Weber Dep. 18:18-20.)

Plaintiff filed his first charge of discrimination with New Mexico's Human Rights Bureau on October 14, 2012.  (Def. Ex. J, Doc. 55-11.)  After receiving a letter requesting clarification (Def. Ex. K, Doc. 55-12), Plaintiff filed an amended charge on November 13, 2012.  (Def. Ex. I, Doc.55-10.)  Plaintiff filed suit in this Court on October 9, 2013.  (Compl., Doc. 1.)  Soon after, LANS moved to dismiss the first count of Plaintiff's Amended Complaint, and the Court granted the dismissal.  (Doc. 20.)  Next, LANS filed an opposed motion for summary judgment on the remaining counts.  (Docs. 54, 61.)  The Court addresses this motion below.

## II.  LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it could influence the determination of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a material fact is "genuine" if a reasonable trier of fact could return a verdict for either party.  *Id.*  If there is a genuine dispute of material fact, then the "facts must be viewed in the light most favorable to the nonmoving party . . . ."  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).  At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."  *House v. Bell*, 547 U.S. 518, 559-60 (2006).

## III.  DISCUSSION

Plaintiff brings two claims based on unlawful retaliation and age discrimination.  Both claims are brought under the New Mexico Human Rights Act, which is analyzed similarly to Title VII cases under federal law.  *See Ocana v. Am. Furniture Co.*, 91 P.3d 58, 72 (N.M. 2004)

(explaining that New Mexico courts "may look at federal civil rights adjudication for guidance in interpreting the NMHRA"). Complaints made under the New Mexico Human Rights act must be filed "within three hundred days after the alleged act was committed." N.M. Stat. Ann. § 28-1-10(A). Accordingly, Plaintiff only challenges allegedly unlawful actions that occurred after December 19, 2011, which is 300 days prior to Plaintiff's charge. (Def. Ex. J, Doc. 55-11.) Plaintiff does not challenge any unlawful conduct that occurred during the summer and fall of 2011.

### A. Unlawful Retaliation

In his briefing, Plaintiff claims to have opposed two forms of discrimination: gender and age. (Doc. 61 at 18.) Specifically, Plaintiff says he complained to management that his coworker, Ms. Baran, was being discriminated against on the basis of gender. (*Id.*) Plaintiff further says that he opposed the age discrimination that he was subjected to at work. (*Id.*)

LANS argues that Plaintiff cannot now raise a claim for gender discrimination retaliation because he failed to exhaust his administrative remedies. (Doc. 54 at 11.) "Under the NMHRA, a plaintiff must exhaust his or her administrative remedies against a party before bringing an action in district court against that party." *Sonntag v. Shaw*, 22 P.3d 1188, 1193 (N.M. 2001). "[T]he purposes of exhaustion are: 1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1185 (10th Cir. 2007). Plaintiff filed an amended charge with the Human Rights Bureau where he checked the boxes for discrimination based on retaliation and age. (Ex. I, Doc. 55-10.) The text of the charge states, in relevant part:

> In the summer of 2012, I complained about discriminatory practices in the workplace to my former supervisor, Andrew Budka. A younger male with less experience than myself was promoted as my new supervisor, Mr. Schnedler. The

> position was not posted and I did not get a chance to apply for the position. . . . In September of 2012, Mr[.] Wismer, second level supervisor, informed me that I was subject to demotion from my current position as the result of a proposed reorganization which his senior managers had already approved.

(*Id.*)  Courts "liberally construe charges filed with [administrative bodies] in determining whether administrative remedies have been exhausted as to a particular claim." *Jones*, 502 F.3d at 1186.

Generally, a plaintiff's discrimination claim in court is "limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted." *MacKenzie v. City of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005). Plaintiff argues that his charge encompassed his claims of retaliation based on gender discrimination because it clearly states that he suffered retaliation for complaining about discriminatory practices. (Doc. 61 at 14.)  The guiding inquiring is whether "the text of the charge . . . contain[s] facts that would prompt an investigation of" the particular claim. *Jones*, 502 F.3d at 1187.  A claim has been sufficiently exhausted if the administrative body "can reasonably be expected to" conduct an investigation into the claim based on the charge. *Id.* Here, nothing on the face of the charge mentions any facts that would lead a Human Rights Bureau investigator to examine Plaintiff's claims on behalf of a female coworker.

Alternatively, Plaintiff argues that the issue was actually raised during the investigation. (Doc. 61 at 15.)  Plaintiff does not offer any legal support for the adequacy of this notice.  In a "rebuttal letter to NMHRB," Plaintiff's lawyer wrote that "Budka spoke with Irving on multiple occasions within the past year and half about how LANL mangers isolated and marginalized Michelle Baran and Irving."[1]  (Doc. 61 ¶ 50; Def. Ex. P, Doc. 66-3.)  This comment was made in

---

[1] Plaintiff did not include this letter in the summary judgment record.  Defendant included it in its Reply brief after recognizing Plaintiff's omission.

paragraph nineteen of a five-page response letter. (Def. Ex. P at 4.) The bulk of the letter focused on age discrimination, the adversity of the employment actions, and the conflict over the "responsibility for security visits to LANL by high profile government officials . . . ." (*Id.* at 3.)

This offhand statement is not sufficient to exhaust a claim for retaliation based on opposition to sexist practices. First, the comment would not have prompted an investigation into complaints about gender discrimination. Second, the statement in the rebuttal letter did not give LANS notice of the violation or give the Human Rights Bureau an opportunity to conciliate the claim. *See Jones*, 502 F.3d at 1185 (stating policy reasons for requiring exhaustion). In fact, defendants do not receive copies of these rebuttal letters. (Doc. 10.) LANS claims that it had no notice of the gender retaliation charge until Plaintiff filed his Complaint. (Doc. 55 at 14.) Plaintiff, who was represented by a lawyer, cannot evade the administrative exhaustion requirements by making an ambiguous reference, without any factual details, in a rebuttal letter. Even viewing the facts liberally, the Court finds that Plaintiff did not properly exhaust this claim and cannot now litigate it in a district court.

Plaintiff has a second theory for his retaliation claim: that he complained about age discrimination. Given the fact that Plaintiff expressly marks the boxes for age discrimination and retaliation, and includes facts referencing ageist practices, the Court finds that Plaintiff did exhaust this claim. Although the charge does not expressly allege facts supporting this claim, courts "liberally construe charges . . . ." *Jones*, 502 F.3d at 1186. Plaintiff, however, faces another obstacle to basing his retaliation claim on age discrimination: he did not expressly allege that he was retaliated against for complaining about ageist practices in his Amended Complaint. (Compl. ¶¶ 27-31.) According to the Amended Complaint, Plaintiff was retaliated against based on his complaints "about discriminatory conduct towards his female peers." (*Id.* ¶ 29.)

Although other sections of the Amended Complaint refer to age discrimination, the issue is not raised in the retaliation section. This oversight could be dispositive. However, the Court dismisses the claim on an alternate ground. Even if Plaintiff had sufficiently alleged retaliation based on opposing age discrimination, the claim fails on the merits.

Under the New Mexico Human Rights Act, it is unlawful for any person or employer to "engage in any form of threats, reprisal or discrimination against any person who has opposed any unlawful discriminatory practice . . . ." N.M. Stat. Ann. § 28-1-7(I)(2). To prove a prima facie case of retaliation under the Act, Plaintiff must show that (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection between these two events. *Ocana*, 91 P.3d at 72.

Plaintiff claims that he engaged in protected conduct when he protested age discrimination practices. (Doc. 61 at 18.) In support of this, Plaintiff points to a conversation with his former supervisor, Mr. Budka. (*Id.*) Allegedly, in this conversation, Mr. Budka advised Plaintiff to stop complaining about security issues and the new point of contact.[2] (Irving Dep. 87:13-88:12.) During his deposition, Plaintiff explained that the point of contact was younger and would not ask the type of tough questions about security protocol that Plaintiff asked. (*Id.*) Plaintiff did not say that he voiced the age concern to Mr. Budka during their conversation. In fact, the transcript section does not contain any statements that Plaintiff made to Mr. Budka— only statements that Mr. Budka made to Plaintiff.

For an act to qualify as "opposition" to unlawful discriminatory practices, "the employee's communications to the employer must sufficiently convey the employee's reasonable

---

[2] Defendant challenges that this evidence is inadmissible hearsay. (Doc. 65 at 4.) The Court does not reach this argument. Even if it were admissible, it would not support Plaintiff's contention.

concerns that the employer has acted or is acting in an unlawful discriminatory manner." *Ocana*, 91 P.3d at 72. "[T]he employer must be able to discern from the context of the statement that the employee opposes an allegedly unlawful employment practice." *Id.* Nothing about Mr. Budka's statements to Plaintiff would have notified LANS that Plaintiff was opposing allegedly unlawful age discrimination. On this basis, Plaintiff's claim of retaliation for opposing ageist practices fails on the merits.

Plaintiff cannot maintain his retaliation claim. He failed to exhaust his administrative remedies on his gender discrimination-retaliation claim. Assuming that Plaintiff exhausted and properly pleaded the age discrimination-retaliation claim, Plaintiff has failed to proffer sufficient evidence to establish a prima facie case. The Court grants LANS's motion for summary judgment on this claim.

### B. Age Discrimination

The second claim that Plaintiff brings is for age discrimination. Plaintiff appears to rely on the *McDonnell-Douglas* burden shifting framework for his case. (Doc. 61 at 15.) To make a prima facie case for age discrimination under the New Mexico Human Rights Act, Plaintiff must show that (1) he is 40 years of age or older, (2) he suffered an adverse employment action, and (3) he was treated less favorably than younger employees. *See Gill v. Pub. Employees Ret. Bd.*, 90 P.3d 491, 500 (N.M. 2004) ("[Plaintiff] must establish that he was treated adversely in his employment because of his age, and that he was at least 40 years of age at the time of the alleged discrimination."); *Cates v. Regents of New Mexico Inst. of Min. & Tech.*, 954 P.2d 65, 71 (N.M. 1998) (explaining that New Mexico uses *McDonnell-Douglas* burden shifting framework for age discrimination cases). Although LANS concedes that Plaintiff was over 40, LANS argues that

Plaintiff cannot show that he suffered an adverse employment action or that he was treated disparately. (Doc. 55 at 19-22.)

The New Mexico Human Rights Act enumerates several adverse actions, including "to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment." N.M. Stat. Ann. § 28-1-7(A). Plaintiff has a variety of theories for showing adverse action. (Doc. 61 at 15-17.) However, Plaintiff can only rely on adverse actions that he exhausted in his charge. *See Martinez v. Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003) ("[E]ach discrete incident of such treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted."). In his charge, Plaintiff identified two potentially adverse actions: he was informed that he was subject to demotion and he was not given the opportunity to apply for a promotion. (Def. Ex. I, Doc. 55-10.) Plaintiff cannot rely on undefined incidents, occurring at unknown times, when he was supposedly "isolated and marginalized." (Doc. 61 at 15-17.)

Comments generally do not constitute adverse employment actions unless they are "coupled with . . . more concrete action." *Ulibarri v. State of New Mexico Corr. Acad.*, 131 P.3d 43, 50 (N.M. 2006). In *Ulibarri*, the New Mexico Supreme Court considered whether three comments could constitute adverse actions. *Id.* In the most offensive comment, a director asked the plaintiff's supervisor, in a critical manner, "What does [the plaintiff] actually do here?" *Id.* The New Mexico Supreme Court determined that this comment was not an adverse action because it did "not constitute a significant, harmful change in the conditions of employment." *Id.* Similarly, here, the "subject to demotion" comment does not rise to the level of adverse action. Plaintiff's new supervisor allegedly made this comment at the September 20, 2012 meeting, when Mr. Wismer and Plaintiff discussed the proposed reorganization and budget cuts.

(Def. Ex. H, Doc. 55-9.) Plaintiff was never demoted, although other managers were. (Wismer Aff. ¶ 16.) Informing Plaintiff of the impending cuts does not constitute adverse action against Plaintiff. Similarly, Plaintiff cannot rely on the comments that he was a "malcontent and troublemaker" to make his case for adverse action. (Doc. 61 at 16.) According to Plaintiff's own testimony, these comments were made at some point in 2011 in reference to Plaintiff's opposition to supposed security breaches and the attendant cover-up. (Irving Dep. 87:6-88:3.) These comments, if uttered at all, are beyond the reach of the statute of limitations and are not related in time to any concrete employment actions that occurred within the statute of limitations.

Plaintiff's second theory for adverse action is the loss of promotion. (Doc. 61 at 16.) Specifically, Plaintiff complains that he was not chosen for the role of operations director. (Doc. 61 at 16.) Mr. Wismer did not accept applications for this position; rather, he selected one of the security managers to take on the extra responsibilities. (Wismer Aff. ¶¶ 21-23.) The operations director role was not a promotion in terms of pay grade or salary. (*Id.* ¶ 21.) In fact, at all times, Plaintiff earned more than the younger employee who was selected to serve as the operations director. (Sandoval Aff. ¶ 4.) Both employees maintained the same employee classification, SM-4. (*Id.*) The operations director function was created to help Mr. Wismer coordinate the increased number of supervisees he was overseeing. (Wismer Aff. ¶ 20.) After a six week trial run, Mr. Wismer determined that the operations director function was not beneficial, and removed the extra duties from the employee assigned to the role. (*Id.* ¶ 31.)

To be adverse, an employment action must constitute "a tangible, significant, harmful change in the conditions of employment." *Ulibarri*, 131 P.3d at 50. Plaintiff insists that an adverse action "is not limited to discriminatory actions that affect the terms and conditions of employment." (Doc. 61 at 16 (citing *Hunt v. Cent. Consol. Sch. Dist.*, 951 F. Supp. 2d 1136,

11

1206) (D.N.M. 2013).) In so doing, Plaintiff conflates the standard for adverse actions in substantive discrimination cases and retaliation cases. The Supreme Court clarified that the standard for adversity is broader in retaliation cases than it is in substantive discrimination cases. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) ("[T]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."). While a broad range of actions can be retaliatory, "the term 'discriminate against' refers to distinctions or differences in treatment that injure protected individuals." *Id.* at 59. The purpose of the antidiscrimination provision is to eliminate "practices that tend to bring about 'stratified job environments.'" *Id.* at 63. In contrast, "acts that merely have a *de minimis* impact upon an employee's future job opportunities" do not count as adversity in the substantive discrimination framework. *Hillig v. Rumsfeld*, 381 F.3d 1028, 1033 (10th Cir. 2004).

    The Court finds that "being passed over" for the operations director function was not an adverse action for the purposes of supporting a prima facie case of substantive discrimination. Plaintiff was not "injured" when he was not assigned these duties: he did not miss out on any increased pay or benefits. Although the operational director function carried a title and additional work, it did not change the employee's pay grade or employment classification. Plaintiff did not submit any evidence to show that the action hindered his future job prospects. Given the circumstances, appointing another worker to the role did not stratify the job environment in a way that the antidiscrimination statutes were designed to prevent. Without a showing of an adverse action, Plaintiff cannot make a prima facie showing of age discrimination. *See Wilson v. Harvey*, 156 F. App'x 55, 58 (10th Cir. 2005) ("An adverse employment action is

an indispensable prerequisite in a Title VII disparate treatment case that contains no direct evidence of intentional discrimination."). LANS is entitled to summary judgment on this claim.

## IV. CONCLUSION

Plaintiff asserted two claims under the New Mexico Human Rights Act: retaliation and discrimination. Plaintiff alleged that he was retaliated against for opposing a coworker's gender discrimination. Because Plaintiff failed to exhaust this claim, the Court dismissed it. Plaintiff also claimed that he was retaliated against for opposing age discrimination. Plaintiff, however, did not provide sufficient evidence to support the retaliation claim and the Court dismissed it. Finally, Plaintiff claimed that he was discriminated against based on his age. Yet, Plaintiff did not show that he suffered any employment actions that would support a prima facie case of age discrimination. For that reason, LANS's motion for summary judgment is granted. In turn, LANS's motion to strike exhibits is denied as moot.

**THEREFORE,**

**IT IS ORDERED THAT**:

(1) Defendant Los Alamos National Security's Motion for Summary Judgment (Doc. 54) is **GRANTED**; and

(2) Defendant's Motion to Strike Exhibits Attached to Plaintiff's Response (Doc. 65) is **DENIED** as moot.

_____
**ROBERT C. BRACK**
UNITED STATES DISTRICT JUDGE